Good morning. You may please the court. Tom Stewart for LaJoy Watson. I'd like to reserve about three minutes for rebuttal, but I'll keep an eye on my time. Constructive notice in Nevada is an issue for the jury. So the district court erred in granting summary judgment on two theories of constructive notice that Nevada binding case law provides are questions of fact for the jury. The first is whether a virtually continuous condition constitutes constructive notice of a hazard. The second is whether a reasonable inspection could have revealed the hazard prior to injury. If I may, I'd like to outline what I think is the most direct route to the most correct result. In Towardosky v. Wayward Hotel, the Nevada Supreme Court said explicitly that whether a reasonable inspection could have revealed a hazard is a question of fact for the jury. Here, we have evidence that there were no sweeps performed for two and a half hours in and around the spill. So on that basis alone, summary judgment was inappropriate because a reasonable fact finder could find that a reasonable inspection could have revealed the ogre. And on this point, the district court agreed that that is a theory of constructive notice, but misapplied that precedent and weighed the facts in favor of Dollar General. So the district court seemed to take the view that because the spill of the yogurt had taken place roughly seven minutes before your client slipped, that any inspection that might have happened wouldn't have happened within that time period. So how do you respond to that point? And I think the district court relied on the timing of sweeps that was in a light most favorable to Dollar General. So the undisputed testimony is that sweeps are supposed to happen every 30 to 45 minutes. Here, the last sweep we see, or I suppose the only sweep we see, is at 1717. The spill is created at 1827. The fall occurs at 1834. Was the yogurt purchased at the store or from the store? Was it brought in from somewhere else? We don't know. The footage doesn't show essentially that child and that mom until they're on the aisle spilling the yogurt. So there's this hour and 10 minutes after the sweep to an hour and 17 minutes after the sweep. If sweeps are being conducted every 30 to 45 minutes, if the sweep is conducted at 30 minutes and then the next sweep is conducted at 45 minutes, that's an hour and 15 minutes after the sweep. That's right in the middle. That's when the yogurt exists. And that was our point of contention with the district court. If we sort of look at this light, is it foreseeable? Is it possible? Could they have found this yogurt? The answer is yes. And I think especially yes on a summary judgment standard. This isn't like a colorable argument or just a gossamer threads of whimsy kind of thing. It's entirely plausible that if they had done what they were supposed to do, they would have found the yogurt. And so because of that, excuse me, Twardowski says that's a question of fact for the jury, and so summary judgment is inappropriate. Well, what if they had done the regular sweeps? Let's just imagine they had done a sweep 10 minutes before the spill. Excuse me. They had done a sweep 10 minutes before the spill, hadn't seen the spill, and the next sweep wouldn't have been due for 30 minutes. Would you have a different case at that point? I don't think so. Certainly that hypo makes it a little bit more difficult, but Twardowski doesn't require any sort of timing issues. It just says whether a reasonable inspection would have revealed it or could have revealed it is a question of fact. Guess where I'm going with this. Does the reasonable investigation depend on how long the yogurt was sitting on the ground? If it had been there for 20 seconds, it seems unlikely that somebody from the store would have noticed that. But if it had been there for 2 hours, then it seems more likely. So we're kind of in the 7-minute range and asking where does that fall. It is difficult, but constructive notice is a question of fact. So in your 20-second hypothetical, right? So I think we'd all agree 2 hours, they could have revealed that. 20 seconds. Imagine a Dollar General employee is conducting a sweep. He's the guy, they've said, go sweep the store, get rid of all the yogurt. But he's a little bored at work. He's on the phone. He's not looking up. He's conducting the sweep in name only, but he walks right by the yogurt. It's only been there 20 seconds, and he walks by because he's not really paying attention. Then the analysis is, well, was that inspection reasonable? And under those facts, it's pretty clear that a reasonable inspection would have revealed a hazard that only existed for 10 seconds or 20 seconds. I think that these sorts of questions of fact are always in, you know, the Nevada case law bears out that they're case specific. So I think most of the time, a hazard that exists for 2 hours is probably going to be revealed through reasonable inspection. But I don't think the case law provides a bright line rule for the sort of time or numerical analysis that these cases often turn into in the district court. How many people worked at the store at the time? Two? I think the record says that there were two in the front and then some people in the freight area. It was, you know, I believe it was a single digit number of people or at least that were in the store, you know, on the clock. Helen Burns provided some deposition testimony, and I believe she said that she and another person were at the cash register and there was somebody else that called her about the spill. So I suppose at least three. But that record is unclear. And when we ask, well, why do you have however many people you have, their answer is because that's what, that's our bottom line. It's, you know, it's a cost-benefit analysis. And so I think that goes into whether their inspection is reasonable. A jury can conclude, like, well, you know, if it would cost millions of dollars to inspect every single second, that's probably not reasonable. We're not going to hold you to that standard. But if they have spills and they could, as they said in deposition testimony, if they could keep the invitees upon their land safer with more staff, I think that's a question of fact for the jury. Was it reasonable? Were their actions reasonable? I mean, I did have that question about your case, where the implication of your case is essentially the dollar general should have had more people working at the store and whether that would be reasonable given the nature of the store. I agree. I don't know if that's, the court has to announce, like, a bright-line rule about how many people the dollar general has to have. But I think that their testimony is if they had more people, then the customers would be safer. And I think if we look back at Towardosky, it's, you know, it's an examination of the landowner's actions with respect to the people on their land. So in that case, there was a slide that hadn't been inspected in a year and a half and a girl went on the slide and got hurt. And the jury found that's constructive notice. If you'd have looked at this thing any time in the last year and a half, you might have found that hazard. And so that's an examination. That sort of puts the spotlight on the landowner. And I think here the motives and the reasons for their staffing levels and their inability or their refusal to sweep according to the policy all sort of factor into that reasonable analysis. So the reasonable inspection issue, I think, is a pretty clear question of fact. And I think that supports reversal on that ground alone. If we could then move to virtually continuous conditions, this is sort of a, this is a point of contention between myself and my friend. My friend says, you can't use a reasonable inspection. You have to just rely on SPRAG. SPRAG versus Lucky Store, and I acknowledge the rule statement in that case says if there's a spill, then you need a virtually continuous condition. I acknowledge that. But I think that is sort of a short-sighted view or a myopic view of that opinion. If you look two or three paragraphs later, even though it announces this rule that you need a virtually continuous condition, it says, but, but it's a question of fact for the jury. And then one paragraph after that, it says, and even without virtual continuity, we still could establish negligence because of the things that the store failed to do. So in SPRAG, they didn't put in sweet mats, even though the produce section was sort of that. Well, what is the continual condition here, though? So there are, the deposition testimony in A Light Most Favorable told LaJoy Watson is that there are weekly spills in the store. Now, my friend says, and I acknowledge, it is not as on point as SPRAG. SPRAG is the person slipped on a grape, and there are grapes that are always, you know, it's incredibly messy in that produce section. They should have known a person was going to slip. But here we have spills in the store once a week, or at least the binding, the corporate representative testimony is that there are spills. There were spills once a week for the nine months preceding the spill. So if we look at a question of fact, perhaps that's weak. You know, perhaps the jury says, well, those spills aren't really the same. Those spills are in a different place. They're not close enough. But it still is a question of fact. If we look at A Light Most Favorable to LaJoy, if a store isn't doing inspections and has weekly spills, they could have found this yogurt, or at least that the law imputes notice upon them because their practices are such that they're not taking foreseeable or reasonable steps to remediate foreseeable harms. What do you contend the economic damages are here, just out of curiosity to understand what you believe the case essentially is worth? Oh, certainly. They're large. She had to get an emergency knee surgery. So at the end of the video, it's a total dislocation of the knee, which caused an artery to burst in her knee. Her past medical specials were something like $350,000. And although the party sort of contests the future medical bills, we've disclosed something like $300,000. She needs a future knee surgery. She had to get emergency knee surgery because of this. And my friend, they don't really contest the mechanism of injury. Their experts have said she was hurt in the fall. So something of that magnitude.  And if the court sides with my friend and says we have to just look at spray, can't look at Tawardowski because Tawardowski deals with a different type of hazard, then I believe certification is appropriate. Tawardowski was never overruled. It was implicitly overruled. And it seems as though there is no solid policy for why certain premises cases could demonstrate constructive notice differently than cases involving other types of hazards. And so that could be, I described earlier what I think is the most correct result. I think that would be the most helpful result if the court doesn't sort of accept the reasonable inspection criteria. This issue is unevenly litigated in federal courts frequently. Sort of anecdotal evidence. But if you look at the Westlaw citations for Sprague and for Tawardowski, you're going to see a mishmash. Sometimes they apply it and sometimes they don't. So the questions are of substantial importance and of broad application. This affects virtually every slip and fall based on a constructive notice argument. Is there another question? But the trial court in this instance did analyze it through a reasonable inspection lens. It's not as if that judge said a reasonable inspection is not a way that you can get to constructive notice. He just found that there wasn't reasonable inspection. That's correct. And so I suppose. So this is the certification request is just for general avoidance of inconsistency in the courts because it didn't really impact you in terms of the trial court level decision. Correct, Your Honor. And that's just because you guys are sitting in a de novo review. So if you say, well, the judge got it wrong because that legal theory doesn't even apply, then our request would be to certify it and sort of bridge that gap between Tawardowski and Sprague on that issue.  Do you want to save some time for rebuttal? I do. Thank you. Thank you. Good morning. Good morning. My name is Michael. May I please report? My name is Michael Lowery. I represent Dalton Midwest LLC. They do business as Dollar General. For the benefit of our audience from the elementary school, this is about a slip and fall at a Dollar General in Las Vegas where the little child on the video appears to spill, we think it was yogurt, maybe a go-gurt, something on the floor. And the question is whether Dollar General can be responsible for that. The district court, as you know, granted summary judgment concluding that although the parties presented two different conflicting theories about what constructive notice could be under Nevada law, that there was not a genuine issue, a material fact under either theory. And that's why the district court granted summary judgment instead of certifying and sending it up. I'd like to pick up on the conversation about Tawardowski. I'm not quite sure how to pronounce it, but that's what I'm going to use for now. Tawardowski did say, as Mr. Stewart has represented to you, however, it involved a fundamentally different fact pattern. In that fact pattern, we have a pool with a slide and the little girl goes up the slide and the handrail breaks off and then she falls. The slide is a permanent feature at that hotel. It is a permanent feature of that pool. It is predictable to the hotel that they have a duty to inspect it. They have an opportunity to inspect it. They know that it is there. We're talking about a temporary hazard that is not necessarily predictable or specifically predictable. This go-gurt was spilled. It's not a normal part of the Dollar General's business nor anyone else's business. And so that's the distinction. Does that matter? The point that you're making right there, does it matter if that is a product that the store sells or not? I don't think that it does. And the reasoning is, although Vaughn's Safeway, we all sell milk or water or other liquids, that doesn't necessarily mean that they're going to be spilled in the store. Presumably the consumer wants to take the product home and actually use it at home or in their business. And so merely selling a liquid or maybe Skittles, something that can be spilled and can be slipped on, or the grapes that were in Sprague, I don't think that merely selling the product is enough to create that constructive notice or that notice that there is going to be a spill. We still go back to the hotel where we know that the slide is there. We know that it's outside. It's exposed to the desert sun. It may have been subject to county codes, but the inspection could occur. Here we don't know that. Merely selling the product doesn't necessarily mean that the product will be spilled. And so that, again, would be the key distinction that I could see from the conversation that you were having with my friend. The other distinction that I think is key is the second paragraph in Sprague. We all talk about constructive notice, virtually continuous condition. And then at the end of the opinion, Sprague talks about even absent constructive notice, and then they start criticizing how the store ran the produce department. And the store could have known that its sweeps and efforts to keep the floor clean were insufficient to mitigate this risk. That gets into a case later on that came out, I believe it was 2012. It's FGA versus Giglio, G-I-G-L-I-O. And that's called the mode of operation theory in Nevada, where if the store is being run in a way, or not the entire store, but the produce section in Sprague, if it's being run in a way where the patrons are doing an activity that was, I believe the language is traditionally performed by a clerk. So before I was born, apparently in the stores you would go in, you'd place an order with the clerk, and the clerk would gather your items and give them to you. And now we've moved to a self-service model that we're all familiar with. The argument with mode of operation is that as a result of that shift, which is a cost-saving measure for everyone, as a result of that shift, the store owner doesn't get to avoid liability. Well, that's what they were describing in Sprague, is that you've shifted to this self-service model, it creates this risk, and you can still bear the potential liability for that. Let's assume that you're right on the virtually continuous part of this, that the hazard here was not virtually continuous. Does that mean you win? Or is there then another question as to whether this was nonetheless reasonable to not have cleaned this up? We... If you conclude that the only way to prove a constructive notice in Nevada is the virtually continuous condition, then yes, we win. Well, I'm asking if, let's assume you're right on just the facts here, that this was not a virtually continuous condition. Okay. Did they have another avenue for arguing this was nonetheless unreasonable? Dollar General's position is no, under current Nevada law, that the only way to prove it is constructive notice. Now, that is a, I'm sorry, virtually continuous condition. That is a flexible standard, though. There are multiple ways to demonstrate a virtually continuous condition. In discovery in this case, plaintiff asked Dollar General in an interrogatory, had there been any prior falls at this particular store? There were only four. None of them involved Go-Gurt or yogurt. None of them had occurred within the last two years before this plaintiff fell. Right. But, I mean, so we can maybe all agree that this specific situation that happened here was not one that happened before or was necessarily likely to happen...  ...in terms of a yogurt, a child spilling a yogurt. At the same time, though, I mean, let's imagine the yogurt had been sitting there for eight hours. Do you think this would, would you be making the same argument or would you be acknowledging that at that point there might be some question as to whether this was negligent? I agree that that's a harder fact pattern for my client. However, we don't have anything in Nevada law that says the mere passage of time or the passage of time itself is, in fact, a way to demonstrate constructive notice. Now, I acknowledge that that is a different definition than other states use. Apparently, I don't practice in California, but apparently in California, Georgia, and I believe Illinois, that is, in fact, a way to demonstrate constructive notice. But Nevada has not recognized that. I mean, my understanding of Nevada law is it takes a very narrow view of this virtually continuous hazard context. So the implication of your argument is basically that stores don't have much liability in terms of things that might be on the floor that people can slip on. Is that right? No. I disagree with that. And the reason is all the different types of evidence that can be used to demonstrate the constructive notice. We look at Sprague where they had the testimony from the store employees talking about how often they found things on the floor in the produce area. The testimony wasn't even focused on just grapes. It was the area in general. You know that there are continuous hazards on the floor there. My friend uses the testimony from the store manager here to talk about the employee spilling thing. But if the passage of time doesn't matter, and it seems the implication of your answer to Judge Bress's question a minute ago is that maybe that doesn't matter under Nevada law. If that's true, then that's going to be the greatest circumstance when you're going to have these problems because you don't expect people to just be throwing stuff on the floor all the time when they're shopping. It just happens as an accident. I don't think I'm saying that, or not intending to say that it doesn't matter at all. And this was an issue we were just discussing before we started, actually. It's that the mere passage of time by itself, absent anything else, that alone does not create constructive notice. Is the passage of time a circumstance that can be considered? Yes, I agree with that. Okay, so I think that's, I think, fair. But we have some other circumstances too, right? We have the size of the spill, which you can see in the video is observable, even though the camera must be some distance away. It also is in the middle of the aisle, right in the middle of it, and in what seems to be a major aisle of the store. I gather the very back aisle where the freezer was kept. So it's not like an aisle that's weakly trafficked. In fact, you see in the video a number of other people going through there. And you add to that the fact that the store didn't seem to follow its own inspection policies on that day in question. So when you take all that together, why is there not a question for a jury? Well, because, one, we don't consider the policies when we're going into that. That's one of the other issues that the district court had. If we allow the stores themselves to define their own standard of care, we create the risk that the stores may not have any policies. They may say, if we're going to get in trouble for doing these, for having a policy that says we do an inspection every 30 to 60 minutes, then we just won't have one. Or, if they can't do that, they might structure it in a way that is so lax that they can never get in trouble for it. And there's no protections to people like my friend's client. It seems like it maybe works the other way around to say, you know, if you have a policy in place that's a reasonable policy, then you might have shown that you were not negligent and you shouldn't be responsible. But when you don't follow your policy, you can't rely on the policy. The other part of that is the district court highlighted. It was the concern about strict liability and that the mere fact that the policy was arguably violated in some way, shape, or form, automatically makes the landlord or the store responsible for that spill and if Ms. Watson falls in it. And that is inconsistent with SPRAG itself. It says that the landlord, like most states, is not a guarantor of every person's safety. There has to be something more. There has to be something beyond just this breach of the store policy to link the fall to the breach. And that is, I think, where the district court got into the discussion about the spill only existing for slightly less than seven minutes. Because even if, as the district court was talking about, even if Dollar General complied with this 30 to 45 minute policy or 30 to 60 minute policy, there's nothing in the record that indicates the inspections had to start at a certain point, stop at a certain point, or where in the store they began. Because if they start in the back next to the cooler and they start at the bottom of the hour, so at 1830, if they start in the back at 1830, they've got four minutes and 27 seconds before the fall happens, maybe in that circumstance it would be reasonable. But if it starts at the front of the store and we don't know how long it takes on average to inspect the store, then the jury still has to speculate as to whether the inspection could have reasonably found this item on the floor before the fall occurred. Is this an argument about negligence? I mean, is this an argument about duty or is it an argument about causation, essentially saying, well, we did do reasonable sweeps and if we had complied with our own policy here, nothing would have changed because we wouldn't have found this yogurt on the floor in the time in question. That sounds more like a causation argument. I agree. It's on the border. It's on the border. Dollar General does not dispute that it owes a duty. Certainly it did not argue that below. The whole point of the motion for summary judgment was that there is no genuine issue of material fact as to a breach as defined under current Nevada law. In terms of finding the spill, the terms of the policy where you do the sweeps every 30 minutes to an hour, depending on the timing of the spill, wouldn't you agree that the facts are such that those sweeps could have found the spill or it could have been that the sweeps couldn't have found the spill? Yes, it is vague. We don't know. Yes, and in that situation where the facts can admit of two distinct possibilities, how does that match with the summary judgment standard, which is there have to be disputes of fact and there is a standard where it's in the light most favorable to the non-moving party? I agree with the way that you've framed the question, and the response is that there is no admissible evidence for the jury to make that determination or to really determine one is more likely than the other. A tie goes to the runner, and here 50-50 goes to the defendant. But that was what I was talking about. We don't have evidence in the record about when the inspections are supposed to start, when they are generally supposed to stop, or how long. But it's not the jury's job to decide whether one is more likely than the other? Not when evidence is lacking. If there was admissible evidence to give the jury some context so that they weren't speculating, then yes, I agree the jury has to make that decision. But the plaintiff's burden was to present that evidence so that the jury had a basis upon which to say a reasonable inspection within these parameters at least had the chance of doing it. Is the argument complicated by the fact that no inspection was done at all within an hour or two, whatever time period we're talking here? It seems like there is some uncertainty, but you want to have that uncertainty fall against them, and they want to have it fall against you. That is one of our disputes, yes. But the issue is, assuming that ones didn't happen, if the district court was talking about that in the transcript, the last sweep is at 17.17, and he says, well, if it's at every 30 minutes, one's at 17.47, 18.17, and so on, and then it falls in between the creation of this particular hazard. And that's why he was also talking about there's nothing in the record that tells me when or where these start or when and where they generally stop. So I don't have something that the jury can look at and say, yes, there is a reasonable chance it would have detected the spill. They have to guess. Right. I guess the difficulty a little bit is that there was no inspection conducted anywhere near the relevant time period, because if there were, then you would have an argument to say, listen, this just fell within that time in which somebody wasn't back there. We can't have a guard posted to watch for spills on every aisle. It's just not reasonable. But the fact that your client didn't have an inspection conducted, perhaps due to the staffing levels, is what I think introduces a complication to the case a little bit. Well, if we run with that for a second, we talk about the staffing levels. There's, again, nothing in the record that would indicate the staffing levels were inappropriate. The plaintiff hasn't presented or did not present below any evidence to say that the staffing level at this Dollar General was below. For instance, if there had been evidence, and I'm about to run out of time. Yeah, please. The staffing level that day was below what it was supposed to be. Say if they had scheduled seven people to work that day and there were perhaps only five in the store, or they had scheduled five and five showed up, but under the industry standard they should have had ten. Perhaps that creates a genuine issue of material fact, but that is not. But wasn't there evidence in the record that under a previous manager that those sweeps were done on a more frequent basis? There was a discussion about that in the record. I'm not entirely sure that person had personal knowledge of it, but I agree with you that discussion was in there. If anything, that shows the flexibility that the store has. Again, that 30- to 60-minute window, there's different ways that different stores, depending on the risk that the store creates for dealing with that. Okay. Thank you very much for your argument, Mr. Lowery. Mr. Stewart, rebuttal. Thank you. I think my friend said that there's no evidence that an inspection could have revealed this. I'm not sure that's correct at all. I think Scott B. Harris tells us we can look at a videotape and see that nobody sweeps this aisle for two hours and 45 minutes. So I think the passage of time, which this Court has held in Rios v. Walmart, is a factor in Nevada's premises liability cases, is hugely important. Judge Forst, I think your question was it doesn't matter. The spill could be there for eight hours, ten hours, a year and a half in Tawardowski, and it wouldn't matter so long as it was only one spill. That can't be correct. That's inconsistent with premises liability. It's inconsistent with the landowner's recognized duty to take reasonable inspection to remediate harm to the people it invites upon its land. I think, Judge Brass, I think your question was if there's no virtually continuous condition, do they win? Their answer, as I said, is yes, they would win. But I think if that's the case, I think it supports certification for the reasons you guys have been discussing with my friend. It's sort of an absurd conclusion that no amount of time could ever give constructive notice of a hazard. I will acknowledge there is a slight missing link, if you will. Tawardowski does deal with a different type of hazard in a premises case. It doesn't say spill. It doesn't say grocery store produce. I agree. Sprague does. But Sprague doesn't talk about reasonable inspection because there is no dispute in that case about the efficacy of their inspection procedures, right? In Sprague, stuff is on the floor constantly. They're sweeping constantly. Sort of a strunk and white thing. You need to omit needless words. So they wouldn't talk about whether their inspections were reasonable because it didn't matter in that case. But what they did say was that the store could have taken further steps. Even with the sweeping, even with all of that, they could have taken further steps upon which the jury could base their finding of negligence. And so I think that... How much of the case comes down to how long the yogurt was on the floor? Because if it was on the floor for 30 seconds, I just don't think you would be making some of these arguments. And if it was on the floor for five hours, I don't think the other side would be making some of these arguments. So where does seven minutes fall within this? It's important in this case. It's important... It was important in Rios v. Walmart, which was two minutes, and the court found constructive notice there. But I think it's important because the facts here show that they could have revealed it. So in the 20-second hypothetical, again, I sort of gave you one earlier, but it is difficult to imagine a case where that really is a material fact in favor of the plaintiff. In the two hours, as you said, difficult to imagine how a defendant could dispute that. But I don't think it's sort of seven minutes just for seven minutes' sake or a bright-line rule or anything. The seven minutes is important because they could have found it if they had followed their own policies. And for that reason, I think reversal and remand is appropriate. But if not, we'd request that you certify to the Nevada Supreme Court. Okay, thank you very much. Thank you. Okay, this case is now submitted. I want to thank both counsel for the very helpful briefing and argument this morning.
judges: BRESS, FORREST, Ohta